IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SHAWN MICHAEL DINNELLA                                       PLAINTIFF

v.                                              CAUSE NO. 1:13CV33-LG-JMR

SHAMBRICA JONES and
ALISEA MENNA                                                DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING
### SHAMBRICA JONES' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [61] filed by the defendant, Shambrica Jones. The plaintiff, Shawn Michael Dinnella, has not responded to the Motion. After reviewing the Motion, the record in this matter, and the applicable law, the Court finds that the Motion for Summary Judgment should be granted.

### FACTS

Dinnella was arrested for petty larceny and booked into the Harrison County jail on February 18, 2012. (Def.'s Mot., Ex. 1 to Ex. A, ECF No. 61-1). He was released on February 22, 2012. (Def.'s Mot., Ex. 3 to Ex. A, ECF No. 61-1). On February 27, 2012, Dinnella was arrested for grand larceny and uttering forgery, and he was again booked into the Harrison County jail. (Def.'s Mot., Ex. 4 to Ex. A, ECF No. 61-1).

On March 12, 2012, Dinnella's property, which allegedly included food stamps and casino cards or chips, was released to Alisea Menna by the defendant Jones. (Def.'s Mot., Ex. 6 to Ex. A, ECF No. 61-1). Jones has signed an affidavit explaining that she released the property to Menna, because a search of the prison's

computer system revealed that Dinnella had been released from prison on February 22nd. (Def.'s Mot., Ex. D, ECF No. 61-4). Jones explained that, pursuant to prison policy she is only required to obtain the authorization of current inmates before releasing their property to third parties. (*Id.*) Authorization from former inmates is not required, and inmates are informed when they are booked that property will only be held for seven days after they leave the prison. (*Id.*; Def.'s Mot., Ex. 10 to Ex. A, ECF No. 61-1). Jones later learned that Dinnella was in fact in custody when she released his property to Menna. (Def.'s Mot., Ex. D, ECF No. 61-4). However, her computer search did not reveal that information because Dinnella's name was misspelled on the admission report pertaining to the February 27th arrest. (*Id.*; Def.'s Mot., Ex. 7 to Ex. A, ECF No. 61-1).

Jones has also submitted affidavits signed by Alisea Menna and her boyfriend, Matt York. In his affidavit, York states that he was housed in the same cell block as Dinnella after the February 27th arrest. (Def.'s Mot., Ex. C, ECF No. 61-3). According to York, Dinnella told him to ask Menna to retrieve the property so that the food stamps and casino cards could be utilized to obtain money that would be deposited in Dinnella's inmate account. (*Id.*) Menna has testified that she retrieved the property pursuant to this authorization, but she later misplaced it. (Def.'s Mot., Ex. E, ECF No. 61-5). Dinnella has not submitted any evidence or affidavits that counter the evidence and affidavits submitted by Jones.

Dinnella, who is currently incarcerated, filed this pro se lawsuit seeking damages from Jones and Menna for the lost property. He has not specified whether

he is filing his claims pursuant to state or federal law or what constitutional rights, if any, may have been violated by Jones. Due to Dinnella's pro se prisoner status, the Court will liberally construe Dinnella's Complaint and address the possibility that he may be asserting claims under both state and federal law, as well as multiple constitutional violations.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

Section 1983 prohibits "persons" acting under color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Thus, in order to assert a viable claim pursuant to 42 U.S.C. § 1983, the plaintiff must allege that he was deprived of a right secured by the Constitution and the laws of the United States. Dinnella claims that Jones

improperly deprived him of his property by releasing it to a third party.

## I.  DINNELLA'S DEPRIVATION OF PROPERTY CLAIM

Jones argues that Dinnella's claim is barred by the *Parratt-Hudson* doctrine. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Under this doctrine, "a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate postdeprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995).  "[W]here employees are acting in accord with customary procedures, the 'random and unauthorized' element required for the application of the *Parratt/Hudson* doctrine is simply not met." *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

> [A] § 1983 action for deprivation of procedural due process is barred if a state has adequate post-deprivation remedies and the following conditions exist: (1) the deprivation must truly have been unpredictable or unforeseeable; (2) pre-deprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct must have been unauthorized in the sense that it was not within the officials' express or implied authority.

*Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007).  Dinnella does not allege that his property was released to Menna in accordance with prison policy.  It is undisputed that Jones' action in releasing the property was an unforeseeable failure to abide by the prison's policy.  Pre-deprivation process was not available, because Jones' actions were not foreseeable, given that there is no

evidence that property had previously been released in violation of prison policy. Furthermore, an adequate post-deprivation remedy is available in the form of a state court claim for conversion. *See White v. Epps*, No. 10-60040, 411 F. App'x 731, 733 (5th Cir. Feb. 14, 2011). Since Jones failed to follow the prison policies for handling prisoner property, the release of Dinnella's property to Menna did not violate Dinnella's constitutional right to due process. To the extent that Dinnella may be alleging claims pursuant to state law or that other constitutional rights were violated, the Court will analyze those potential claims as well.

## II. DINNELLA'S CLAIMS AGAINST JONES IN HER OFFICIAL CAPACITY

Section 1983 prohibits "persons" acting under color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). A municipality, or county, cannot be held liable solely because it employs a tortfeasor. *Id.* at 691. Thus, a plaintiff is required to demonstrate the following three elements: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

> Municipal liability for section 1983 violations results if a
> deprivation of constitutional rights was inflicted pursuant to official
> custom or policy. Official policy is ordinarily contained in duly
> promulgated policy statements, ordinances or regulations. But a
> policy may also be evidenced by custom that is: " . . . a persistent,

> widespread practice of City officials or employees, which, although not officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . . ." Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined.

*Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

As explained previously, Dinnella does not allege that Jones acted in accord with any policy. In fact, he claims that she violated the prison's policies.[1] Furthermore, there is no evidence of a custom of releasing property to third parties in violation of prison policy. Therefore, Dinnella has not alleged that the moving force behind the violation of his constitutional rights was a policy or custom. His claims against Jones in her official capacity must be dismissed.

### III. DINNELLA'S CLAIMS AGAINST JONES IN HER INDIVIDUAL CAPACITY

"Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an official is entitled to qualified immunity, the court asks (1) whether the plaintiff has

---

[1] The Court recognizes that this violation of prison policy was unintentional. Jones was unaware that Dinnella was an inmate at the time the property was released due to a misspelling of his name on his February 27th admission report. Prison policy required Jones to obtain Dinnella's permission only if he was an inmate, and the prison was only required to retain his property if he was an inmate.

alleged a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).  Once a defendant invokes qualified immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense. *Crostley*, 717 F.3d at 422 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). While reviewing a motion for summary judgment seeking qualified immunity, the court should view the evidence in the light most favorable to the non-movant. *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011).

      Dinnella cannot demonstrate that Jones' conduct was objectively unreasonable in releasing the property to Menna.  Jones conducted a search of the prison's records to determine whether Dinnella was incarcerated on March 12, 2012, the date that Menna arrived to retrieve the property.  Her search revealed that Dinnella had been released from custody on February 22, 2012.  The fact that Dinnella was actually in custody due to a subsequent arrest was not apparent, because someone had misspelled Dinnella's name when his subsequent arrest was recorded in the prison's computer system.  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012).  Since Jones was merely mistaken when she released the property, she is entitled to qualified immunity.

**IV. DINNELLA'S STATE LAW CLAIMS**

To the extent that Dinnella may be asserting additional claims pursuant to state law, those claims must also be dismissed. Miss. Code Ann. § 11-46-11 provides:

> After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

Miss. Code Ann. § 11-46-11(1). Dinnella admitted at his deposition that he failed to provide notice of his claim in accord with the statute. (Def.'s Mot., Ex. B at 24, ECF No. 61-2). The Mississippi Supreme Court has held that Section 11-46-11(1) imposes a mandatory requirement on plaintiffs suing governmental entities. *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶17) (Miss. 2010). Therefore, to the extent that Dinnella may have attempted to file state law claims against Jones, those claims must be dismissed without prejudice. *See id.*

## CONCLUSION

For the foregoing reasons, the Court finds that Dinnella's lawsuit against Jones must be dismissed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [61] filed by the defendant, Shambrica Jones, is **GRANTED**. Dinnella's federal claims are hereby **DISMISSED WITH PREJUDICE**, and his stat law claims are **DISMISSED WITHOUT PREJUDICE**. A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 31st day of March, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE
